United States District Court
Southern District of Texas
**ENTERED**
September 08, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FIDELIS J. BADAIKI,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-371 |
| **CAMERON INTERNATIONAL CORP.,** | § § § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court[1] are Plaintiff's and Defendant's cross-motions for summary judgment (Dkt. Nos. 40, 90) and Plaintiff's Motion for Leave to File audio recordings in support of his case (Dkt. No. 46). Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** that Plaintiff's Motion for Leave to File and Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

I. **BACKGROUND**

A. **Factual Background**

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). The following facts are taken from the evidence, pleadings, and briefings and are undisputed unless otherwise noted.

Plaintiff Fidelis Badaiki ("Plaintiff") is a Black male who was hired by Defendant Cameron International Corporation ("Cameron"), a global oil and gas company, as a Senior Designer in

---

[1] On May 26, 2020, the District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 25.) On July 10, 2020, the case was transferred to the undersigned.

2007. (Dkt. No. 1-1 at 3; Dkt. No. 39 at 2.) Plaintiff worked in Cameron's Drilling Systems Unit at its Bingle Road office in Houston, Texas and made sizing designs and calculations for oil drilling products. (Dkt. No. 1-1 at 3; Dkt. No. 39 at 2.) Plaintiff was rated as "meets expectations" in his annual performance evaluations (Dkt. Nos. 44-1 to 44-3) and received positive feedback from his managers and co-workers (Dkt. Nos. 44-4 to 44-6). For example, Plaintiff's supervisor supported his self-nomination for a promotion in January 2016 and stated he tackled problems independently, made sound decisions, and was prepared to succeed at the next level. (Dkt. No. 44-4 at 5; Dkt. No. 39 at 11.)

However, there were ongoing issues between Plaintiff and Cameron beginning in 2014. On August 14, 2014, Plaintiff filed a written complaint with Cameron's human resources department claiming he was the victim of harassment and racism at work. (Dkt. No. 1-1 at 3; Dkt. No. 9 at 6–7.) According to Plaintiff, on September 8, 2014, his supervisor and human resources representatives told him that he was required to undergo a psychiatric evaluation as a condition of employment. (Dkt. No. 1-1 at 3.) According to Plaintiff, he was placed on administrative leave when he refused the evaluation and was later fired when he told his managers that his complaint had constituted a protected activity under the law. (*Id.*)[2] Plaintiff filed an EEOC complaint on September 12, 2014 alleging retaliation, disability discrimination, and racial harassment. (*Id.* at 4; Dkt. No. 9 at 7–8.)

On February 25, 2015, Plaintiff and Cameron settled his EEOC claims and Plaintiff returned to work. (Dkt. No. 39 at 5–9.) According to Plaintiff, he was immediately and consistently

---

[2] In Cameron's answer, it admits that Plaintiff "was placed on administrative leave in September of 2014 and dismissed shortly thereafter." (Dkt. No. 9 at 7.) Cameron does not expressly admit that it requested a psychiatric evaluation, that the administrative leave related to any such request, or that termination was due to Plaintiff's complaint. (*See id.*)

mistreated upon his return. (Dkt. No. 1-1 at 4.) For example, Plaintiff alleges his supervisor said that he would not be promoted or given additional projects, that Cameron would "get rid of" him if he complained, and that he should see a psychiatrist. (*Id.*) Plaintiff also alleges that his co-workers vandalized his cubicle and that, when he suggested sensitivity training, Cameron's Engineering Director responded by stating that he "carried a .45 caliber hand gun" instead. (*Id.*) Plaintiff alleges that he complained to his supervisor but was told to find another job. (*Id.*) Finally, Plaintiff alleges that he was promoted in August 2015 but his increased wages were later improperly reduced. (*Id.* at 5.) When he complained about the reduction in wages, according to Plaintiff, his supervisor again insisted he see a psychiatrist as a condition of employment. (*Id.*) Cameron denies these allegations and any wrongdoing associated with them. (Dkt. No. 9 at 9–10.)

Plaintiff was terminated on March 3, 2016. (Dkt. No. 39 at 60.) According to Cameron, it experienced a significant economic downturn beginning in 2014 and had to consistently reevaluate its employee headcount. (*Id.* at 13–51; Dkt. No. 40-1 ¶¶ 9–10.) Cameron reduced its Drilling Systems Unit workforce by 241 employees in January and February 2016 and released sixteen employees from its Bingle Road office, including Plaintiff, on March 3, 2016. (Dkt. No. 39 at 47, 67; Dkt. No. 40-1 ¶¶ 11, 15.) According to Cameron, the decision to release Plaintiff was based on a system that evaluated each employee's job performance, communication skills, and leadership and ranked them accordingly. (Dkt. No. 39 at 53–58; Dkt. No. 40-1 ¶¶ 12–13.) Plaintiff adamantly opposes Cameron's explanation for his termination and asserts that it was instead motivated by discrimination and retaliation. (Dkt. No. 1-1 at 5–7; *see* Dkt. Nos. 44, 90.)

### B. Procedural Background

On December 21, 2016, Plaintiff filed an EEOC complaint based on the events described above and was issued a right to sue letter on October 25, 2018. (Dkt. No. 4-3.) Plaintiff filed this

lawsuit in the 270th Judicial District of Harris County, Texas on December 12, 2018, alleging disability discrimination and hostile work environment in violation of the ADA and retaliation in violation of the ADA and Title VII. (Dkt. No. 1-1.)[3] Plaintiff was represented by an attorney at the time but is now proceeding *pro se*. Cameron removed the case to the Southern District of Texas and subsequently moved to dismiss based on statute of limitations and failure to state a claim. (Dkt. Nos. 1, 4.) Judge Andrew Hanen, who was originally assigned to the case, granted in part and denied in part Cameron's motion to dismiss. (Dkt. No. 8.) As to the statute of limitations argument, Judge Hanen dismissed Plaintiff's claims to the extent they were "based upon acts or omissions that occurred prior to [February 25, 2016]." (*Id.* at 1–2.) As to the failure to state a claim argument, Judge Hanen denied the motion but stated the Court would reconsider it on summary judgment if necessary. (*Id.* at 2.)

On November 2, 2020, Cameron filed a motion for summary judgment arguing that Plaintiff could not make a prima facie showing for any of his claims and that, even if he could, Cameron terminated him based on a legitimate, nondiscriminatory reason—namely, the reduction in workforce and Plaintiff's ranking in comparison to other employees. (Dkt. No. 40 at 4–5.) Plaintiff filed a response (Dkt. No. 44), Cameron filed a reply (Dkt. No. 48), and Plaintiff filed a sur-reply (Dkt. No. 52).[4] Plaintiff also filed a Motion for Leave to File evidence—an SD card with audio recordings purportedly between Plaintiff and his supervisors—in support of his case. (Dkt. Nos. 46, 47.) Several months later, Plaintiff filed his own Motion for Summary Judgment based

---

[3] Plaintiff subsequently brought another case based on the same conduct under 42 U.S.C. § 1981. (*See* Case No. 20-CV-2216.) The two cases were never consolidated but were assigned to the same Judges. On August 23, 2021, this Court recommended dismissal with prejudice of those claims under Rule 12(b)(6). (Case No. 20-CV-2216, Dkt. No. 104.)

[4] The Court allowed Plaintiff to file a sur-reply given his *pro se* status. (Dkt. No. 54.)

primarily on recently-produced metadata from Cameron's ranking chart. (Dkt. No. 90.)[5] Cameron filed a response opposing the motion based on the merits and its untimeliness. (Dkt. No. 92; *see* Dkt. No. 21.) Plaintiff replied. (Dkt. No. 94.) Given that Plaintiff is *pro se* and that new evidence was produced, the Court considers the merits of the motion. However, as explained below, Plaintiff fails to present competent evidence to establish a prima facie case of discrimination or retaliation and the Court recommends granting summary judgment in favor of Cameron.

## II. LEGAL STANDARDS UNDER RULE 56

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Pac. Premier Bank v. Hira*, 768 F. App'x 229, 231 (5th Cir. 2019).

---

[5] Plaintiff also labeled his motion as a Motion for Judgment under Rule 52(c). However, Rule 52(c) authorizes a court to enter judgment during a nonjury trial and is thus inapplicable.

In reviewing a motion for summary judgment, the court may not weigh the evidence or make any credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996). However, the court must make reasonable factual inferences in favor of the nonmoving party without accepting "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) ("[The nonmoving party's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted); *Robin v. City of Frisco*, No. 16-CV-576, 2017 WL 5483883, at *4 (E.D. Tex. Nov. 15, 2017) ("[T]he Court requires significant probative evidence from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant.") (quotations omitted). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird*, 2020 WL 208815, at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The court, therefore, must review each party's cross-motion for summary judgment independently and make inferences in the light most favorable to the nonmoving party. *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020); *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014). However, while the court must consider each motion independently, it is free to address them together. *See, e.g.*, *Mishra v. Bank of Am.*, No. 14-CV-1521, 2016 WL 944133, at *5 (N.D. Tex.

Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1060311 (Mar. 11, 2016), *aff'd*, 668 F. App'x 560 (5th Cir. 2016).

### III. SUMMARY JUDGMENT EVIDENCE

#### A. Plaintiff's Audio Recordings

Plaintiff has moved for leave to file audio recordings to support his case. (Dkt. Nos. 46, 47.) According to Plaintiff, these recordings contain conversations in which his supervisors made statements such as "Cameron will get rid of you if you complain about a protected activity" and "All you should have done is live with the harassment." (Dkt. No. 44 at 7–9.) Plaintiff transcribed pieces of these audio recordings into his briefs and submitted a declaration that the audio recording exhibit "is true and correct, based on [his] personal knowledge." (Dkt. No. 52-1; *see also* Dkt. No. 52 at 1–7; Dkt. No. 90 at 5–11, 20–21; Dkt. No. 94 at 2–3.) Cameron objects to the audio recordings and argues they are not properly authenticated under Federal Rule of Evidence 901. (Dkt. No. 48 at 3.) Cameron also points out that Plaintiff's purported transcription of the audio recordings has not been certified by a stenographer or other competent official. (Dkt. No. 53 at 2 n.1.) The Court agrees with Cameron.

To be considered on summary judgment, the proponent of evidence bears the burden "to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Smith v. Palafox*, 728 F. App'x 270, 275 n.3 (5th Cir. 2018) (citing Rule 56 advisory committee's note). Evidence must be authenticated in order to be admissible, meaning the proponent must demonstrate the material is what he claims it to be. *See* FED. R. EVID. 901(a); *Johnson v. Gwinnett Cty. Sch. Dist.*, No. 11-CV-471, 2012 WL 5987584, at *3 (N.D. Ga. Oct. 17, 2012), *report and recommendation approved*, 2012 WL 5987581 (Nov. 28, 2012). "With respect to tape recordings in particular, the proponent must demonstrate 'that the recording as played is an

accurate reproduction of the relevant sounds previously audited by a witness.'" *Johnson*, 2012 WL 5987584, at *3 (quoting *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977)). This can be done through evidence as to "the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions or alterations in the relevant portions of the recording, and the identification of the relevant speaker." *Biggins*, 551 F.2d at 66.

Here, in his Motion for Leave to File, Plaintiff simply states that he submitted audio recordings on an SD card to the Clerk of Court and labeled them as exhibit "S20." (Dkt. Nos. 46, 47.) He later provides a declaration, under penalty of perjury, that the "audio recording exhibit S20 is true and correct, based on [his] personal knowledge." (Dkt. No. 52-1.) This conclusory declaration, however, is insufficient for purposes of authentication. Plaintiff fails to provide any information on the type of device used, its reliability, or his competency to operate it. Plaintiff also fails to provide information on whether he deleted portions of the recordings or altered them in any way. In fact, his own transcriptions contain significant gaps in time. (*See, e.g.*, Dkt. No. 52 at 2 (transcription that supervisor stated "I want to keep all my resources, . . . I am not thinking of letting go of Fidelis" at 00:21:35 and that supervisor stated "Either adapt and deal with it or find you another job" at 00:24:40, with no transcription of what occurred in between).) Some parts are not transcriptions at all, but instead are Plaintiff's own summaries of the conversations. (*See, e.g.*, *id.* at 5.) The Court finds that these recordings and transcripts are not properly authenticated.

The recordings and transcripts are therefore inadmissible in their present form and Plaintiff has failed to explain how such material could be presented in admissible form.[6] They should be excluded on summary judgment and Plaintiff's Motion for Leave to File should be denied. *See,*

---

[6] The Court notes that Plaintiff failed to sit for a deposition despite numerous attempts by Cameron to arrange one. (*See* Dkt. No. 40-2.)

*e.g.*, *Hooge v. Union Pac. R.R. Co.*, No. 18-CV-1112, 2020 WL 3067219, at *4 (M.D. La. June 9, 2020) (excluding transcript of audio recording on summary judgment as not authenticated because proponent failed to attest to or provide evidence of how the transcript was preserved, the software used, or who prepared the transcript, even though proponent did attest that she made the recordings with her cell phone and the transcripts were accurate); *Johnson*, 2012 WL 5987584, at *3 (finding an affidavit stating that a recording was true and accurate to be insufficient for authentication because there were unexplained errors or corrections in the transcript—and thus no evidence that the recording had not been materially altered—and excluding the recording).[7]

### B. Plaintiff's Performance Evaluations

Cameron objects to the performance evaluations and recommendations Plaintiff submitted as summary judgment evidence because, according to Cameron, they are not authenticated and Plaintiff failed to produce them in discovery. (Dkt. No. 48 at 2–3; *see* Dkt. Nos. 44-1 to 44-6.) The Court disagrees.

As to production of the documents, Cameron makes a conclusory assertion that they "do not appear to have been produced during discovery." (Dkt. No. 48 at 2.) Cameron, however, then cites its discovery requests for "daily audio/video recordings of events that occurred," not requests for documents related to Plaintiff's job performance. (*Id.*; *see also* Dkt. No. 48-1.) Moreover, these

---

[7] Plaintiff argues Cameron failed to make an authenticity objection when he produced the recordings a year ago and thus has waived such an objection. (Dkt. No. 52 at 7.) Plaintiff fails to cite any rule or case for the proposition that authenticity objections must be presented upon production of the disputed evidence. In any event, it is not clear that the audio recordings submitted on summary judgment are the same as those produced during discovery. (*See* Dkt. No. 48 at 2; Dkt. No. 49 at 5 (email correspondence in which Cameron asked Plaintiff to provide a copy of the audio recordings submitted to the Court and Plaintiff simply responded, "It was sent to you a while back").) Cameron's authenticity objection has not been waived.

documents would have been created by or submitted to Cameron—and thus already in its possession—unless they were completely fabricated, which Cameron does not allege. In fact, Plaintiff asserts that *Cameron* produced these documents *to Plaintiff* during discovery (Dkt. No. 52 at 7), and Cameron never argues otherwise in its subsequent briefing. (*See* Dkt. No. 92 (failing to object to these documents even after Plaintiff resubmitted them).) The Court cannot conclude that Plaintiff failed to produce these documents in discovery or that Cameron otherwise did not have timely access to them. They cannot be excluded on this basis.

As to authenticity, Cameron asserts Plaintiff has not demonstrated the documents are what he purports them to be. (Dkt. No. 48 at 3.) However, Plaintiff filed a declaration under penalty of perjury that these documents were true and correct. (Dkt. No. 52-1; *see also* Dkt. No. 44 at 24.) While this is insufficient in the context of audio recordings—which, as described above, must be supported by certain information demonstrating accuracy—such a declaration is generally sufficient for authenticating business documents. *See Rachal v. Select Portfolio Servicing, Inc.*, No. 17-CV-871, 2018 WL 5724455, at *4 (E.D. Tex. Oct. 5, 2018) (collecting cases that find sworn affidavits sufficient to authenticate documents on summary judgment), *report and recommendation adopted*, 2018 WL 6171793 (Nov. 21, 2018). Cameron fails to explain why Plaintiff's affidavit should not be subject to this general rule, and the Court finds the evaluations and recommendations have been properly authenticated. The Court will therefore consider them in its summary judgment analysis.

### C. Cameron's Ranking Table

Plaintiff objects to the ranking table Cameron submitted as summary judgment evidence. The ranking table assigns employees points based on performance and was used, according to Cameron, as an objective means to determine who would be laid off during the reduction in

workforce. (Dkt. No. 39 at 53–58; Dkt. No. 40-1 ¶¶ 12–13.)[8] Plaintiff asserts that this ranking table was falsified in order to justify his improper termination because: (1) it contains information from 2014 when he was not an employee; (2) it is inconsistent with his positive performance evaluations; and (3) metadata produced during discovery demonstrates the table was edited by Cameron's attorney. (Dkt. No. 90 at 1–2, 12–13.) Cameron argues these accusations are baseless. (Dkt. No. 48 at 4–5; Dkt. No. 92 at 9–12.) The Court agrees with Cameron.

First, Plaintiff's assertion as to the inclusion of 2014 data is speculative. It is undisputed that Plaintiff *was* an employee from January to mid-September of that year. Although Plaintiff asserts, without evidence, that Cameron only performs evaluations at the end of the year and only with input from the employees themselves, the Court has no reason to believe Cameron could not properly assign rankings for the eight months in 2014 that Plaintiff was an employee. This is not a basis to exclude the ranking table.

Second, the ranking table is not inconsistent with the performance evaluations and recommendations Plaintiff submitted as evidence. All of these documents show Plaintiff consistently met, but did not exceed, job expectations. (*See* Dkt. No. 39 at 53–58; Dkt. Nos. 44-1 to 44-3.) Most of the recommendations Plaintiff submitted were from co-workers who were not involved in creating the ranking table. (*See* Dkt. Nos. 44-5, 44-6.) While Plaintiff did receive positive comments from his supervisors, it is entirely plausible to receive positive feedback and also be ranked lower than other employees and released due to an industry downturn. *Cf. E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) ("In the context of a reduction in

---

[8] Plaintiff received rankings the same or above sixteen of his co-workers and below forty-one of his co-workers. (*See* Dkt. No. 39 at 53–58; Dkt. No. 48 at 14.)

force, . . . some employees may have to be let go despite competent performance."). This, again, is not a basis to exclude the ranking table.

Finally, Plaintiff's interpretation of the metadata is unfounded. Plaintiff points to a timestamp showing the table was created on February 6, 2015 by Judy Rincon and last modified on June 22, 2018 by Cameron's former attorney, arguing that this demonstrates falsification because Plaintiff was not an employee on either date and the table should never have been modified by Cameron's attorney. (Dkt. No. 90 at 1–4; *see* Dkt. No. 91 at 2.) The Court has no reason to believe Plaintiff was not added to the table after he was reinstated in February 2015 and before he was ultimately terminated in March 2016. In any event, Cameron offers a logical explanation for the latest modification. (*See* Dkt. No. 92 at 11 n.3.) The metadata does not provide a basis for exclusion. The Court will consider the ranking table and any evidence based on the ranking table in its analysis.[9]

## IV.   PLAINTIFF FAILS TO PRESENT EVIDENCE OF A PRIMA FACIE CASE

Plaintiff has asserted discrimination and hostile work environment claims under the ADA and retaliation claims under the ADA and Title VII. (Dkt. No. 1-1.) Parties have cross-moved for summary judgment on all claims. (Dkt. Nos. 40, 90.) As explained below, Plaintiff has not presented a prima facie case for any of his claims and thus summary judgment should be granted in Cameron's favor.

---

[9] Plaintiff also makes various arguments as to Cameron's use of the ranking table. For example, he argues another employee with a similar job was retained but the table does not show whether that employee ranked higher than Plaintiff since it is redacted. (*See* Dkt. No. 90 at 5.) However, Cameron's representative attests that Plaintiff was selected for release because he ranked lower than other employees. (Dkt. No. 40-1 ¶ 13.) In any event, Plaintiff provides no evidence that the particular employee in question performed a similar job such that a direct comparison between them would be warranted.

The ADA prohibits discrimination on the basis of disability in several aspects of society, including in the employment context. 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."). Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). The ADA and Title VII contain similar language, structures, and purposes. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 234 (5th Cir. 2001).

Employment discrimination claims under these statutes are generally subject to the *McDonnell Douglas* burden-shifting framework when, as here, a plaintiff relies on circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 & n.17 (5th Cir. 2020). Under this framework, the plaintiff must first present evidence of a prima facie case of discrimination. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). If the plaintiff meets this burden, a presumption of discrimination arises and the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Id.* "If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th

Cir. 2007); *see Diggs v. Burlington N. & Santa Fe Ry. Co.*, No. 15-CV-186, 2017 WL 1435738, at *3 (N.D. Miss. Apr. 20, 2017), *aff'd*, 742 F. App'x 1 (5th Cir. 2018).

Although the burden of production shifts between the plaintiff and defendant under this framework, the burden of persuasion always remains with the plaintiff. *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001). In other words, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).[10]

### A. Discrimination and Hostile Work Environment under the ADA

"To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quotations omitted); *see also Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021). "To establish a hostile work environment claim under the ADA, a plaintiff must show: (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt,

---

[10] It is not clear whether the *McDonnell Douglas* framework applies to Plaintiff's hostile work environment claim. *Compare Carpenter v. Haaland*, No. 19-CV-13208, 2021 WL 1198261, at *10 n.122 (E.D. La. Mar. 30, 2021) ("The *McDonnell Douglas* burden-shifting analysis—which allows the [employer] to proffer a legitimate, nondiscriminatory reason behind its actions—does not apply to [hostile work environment] claim[s] because there the [employer] may not offer a legitimate reason for creating such an environment."), *with Hayatdavoudi v. Univ. of La. Sys. Bd. of Trs.*, 240 F.3d 1073 (5th Cir. 2000) (applying the framework to particular adverse employment actions within plaintiff's hostile work environment claim). However, under either the *McDonnell Douglas* framework or general summary judgment standards, the result is the same: Plaintiff has failed to present evidence supporting his claim.

remedial action." *Patton v. Jacobs Eng'g Grp.*, 874 F.3d 437, 445 (5th Cir. 2017) (quotations omitted). Both of these claims require a plaintiff to present evidence that he is disabled and that he faced discrimination or harassment because of his disability. Plaintiff here has not done so.

As to disability, Plaintiff *alleges* that his supervisors insisted he undergo a psychiatric evaluation as a condition of employment and thus they must have regarded him as disabled. (Dkt. No. 1-1 at 4–7.) The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities[;] (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). In other words, the ADA does protect individuals who are regarded as having a physical or mental impairment, even if they are not actually disabled. *See id.* § 12102(1)(C). An individual meets the requirement of "being regarded as having such an impairment" if he "has been subjected to [a prohibited action] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A); *see Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).

Plaintiff does not argue he is actually disabled and he fails to present competent evidence that Cameron regarded him as disabled. In fact, Plaintiff's own evidence demonstrates his supervisors were satisfied by his performance and thus tend to show Cameron did not perceive him as having any impairment. (*See* Dkt. Nos. 44-1 to 44-3 (rating Plaintiff as "meets expectations" in all areas).) Plaintiff fails to present sufficient evidence as to this element. *See, e.g.*, *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2015) (finding plaintiff failed to make a prima facie case for ADA violations because he pointed to no evidence that his employer perceived him as disabled or that he otherwise met the ADA's definition of disability); *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 486–89 (M.D. La. 2012) (same).

As to discriminatory motives, Plaintiff *alleges* he was relegated to a cubicle, told to see a psychiatrist, denied a promotion, and terminated because of his perceived disability. (Dkt. No. 1-1 at 5, 7–8.) But Plaintiff does not present evidence of these actions or their connection to perceived disability. He points only to the evaluations described above, which he argues demonstrate that Cameron's stated reason for terminating him was merely pretext. (Dkt. No. 44 at 4–7; Dkt. No. 90 at 15–22.) This argument ignores Plaintiff's burden to present evidence of a prima facie case *before* Cameron must offer a legitimate, nondiscriminatory reason for its actions.[11] Nevertheless, this evidence does not create a genuine issue of material fact because it is consistent with Cameron's reasoning that Plaintiff received average ratings and was released accordingly. (Dkt. No. 40-1 ¶¶ 9–16; *see* Dkt. No. 39 at 53–58.) Plaintiff fails to present sufficient evidence as to discriminatory motive. *See, e.g.*, *Byrnes v. City of Hattiesburg*, 662 F. App'x 288, 291 (5th Cir. 2016) (finding plaintiff did not present evidence that harassment was because of disability and noting plaintiff "must come forward with more than speculation of unlawful harassment to survive summary judgment"); *Diggs*, 2017 WL 1435738, at *7 (finding plaintiff did not establish a prima facie case when he failed to present evidence that discrimination was because of disability).

Even construing the arguments and evidence in the light most favorable to Plaintiff, he fails to present evidence of a prima facie case of discrimination or hostile work environment under the ADA. The Court, therefore, need not determine whether Cameron has proffered a legitimate, nondiscriminatory reason for its actions or whether Plaintiff has established pretext. *See Moore v.*

---

[11] Plaintiff argues he already established a prima facie case by surviving Cameron's earlier motion to dismiss. (Dkt. No. 44 at 21–23.) However, the Court did not evaluate his claims on the merits nor find that he met any evidentiary burden. This argument lacks merit. *See Thomas v. Stafflink, Inc.*, No. 17-CV-3902, 2020 WL 4480871, at *3 (S.D. Tex. July 8, 2020), *report and recommendation adopted*, 2020 WL 4465048 (Aug. 3, 2020).

*City of Rowlett*, No. 10-CV-73, 2011 WL 13232594, at *7 (N.D. Tex. May 5, 2011). These claims cannot survive summary judgment.

### B. Retaliation under the ADA and Title VII

"To establish a prima facie case of retaliation under the ADA or Title VII, a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013).[12] Protected activities include opposition to an employment practice made unlawful by Title VII or the ADA and participation in any investigation, proceeding, or hearing under Title VII or the ADA. *Butler*, 838 F. Supp. 2d at 495. An adverse action in the context of retaliation is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (quotations omitted); *see also Butler*, 838 F. Supp. 2d at 496. A causal connection can be inferred by close timing between the protected activity and the adverse action or by other evidence of retaliatory intent. *Feist*, 730 F.3d at 454–55.

Plaintiff here *alleges* he engaged in three types of protected activities that led to his termination: (1) complaining of discrimination to his supervisors at Cameron in August 2014 and February 2015; (2) filing an EEOC complaint on September 12, 2014 alleging disability and racial discrimination; and (3) refusing to comply with Cameron's improper requests for psychiatric evaluations in September 2014, February 2015, and August 2015. (Dkt. No. 1-1 at 4–7.) The Court

---

[12] In contrast to discrimination and hostile work environment claims, a plaintiff asserting an ADA retaliation claim need not establish actual or perceived disability; "a reasonable, good faith belief that the statute has been violated suffices." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) (quotations omitted).

assumes, for the purposes of this analysis, that each of these activities occurred and can be considered protected under both the ADA and Title VII.

Plaintiff, however, has not presented evidence on a causal connection between the protected activities and his termination on March 3, 2016. As explained above, a causal connection can be inferred from temporal proximity—*i.e.*, when the protected activity and adverse action are "very close" in time. *Feist*, 730 F.3d at 454. The Fifth Circuit has found "a time lapse of up to four months may be sufficiently close, while a five month lapse is not close enough without other evidence of retaliation." *Id.* (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) and *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Other evidence of retaliation can include "an employer's departure from typical policies and procedures" or "an employment record that does not support dismissal." *Id.* at 454–55; *see also DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007).

Here, there was at best a six-month gap between Plaintiff's last protected activity in August 2015 and his termination in March 2016. This timing alone is insufficient to establish a causal connection. *See, e.g.*, *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 206 (5th Cir. 2007) (finding six-month gap between grievance and non-renewal of contract insufficient to support inference of causation). Aside from the positive performance evaluations—which, as explained above, are consistent with termination due to reduction in workforce—Plaintiff has not proffered any evidence of otherwise retaliatory intent. Plaintiff has failed to establish a prima facie claim of retaliation under either the ADA or Title VII. The Court, therefore, need not determine whether Cameron has proffered a legitimate, nondiscriminatory reason for its actions or whether Plaintiff has established pretext. *See Moore*, 2011 WL 13232594, at *9. These claims cannot survive summary judgment.

## V. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Leave to File (Dkt. No. 46) and Motion for Summary Judgment (Dkt. No. 90) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. No. 40) be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on September 8, 2021.

Sam S. Sheldon
United States Magistrate Judge